# *NATIONAL REGISTERED AGENTS, INC.*
## *SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To:  Steven E. Fox
GreenSky, LLC
5565 GLENRIDGE CONNECTOR, SUITE 700
ATLANTA, GA 30342

SOP Transmittal #  **538566832**

800-592-9023 - Telephone

Entity Served:  GreenSky, LLC  (Domestic State: GEORGIA)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of GEORGIA on this 10 day of November, 2020. The following is a summary of the document(s) received:

1. **Title of Action:**  Joan Simring, on behalf of herself and all others similarly situated, Pltf. vs. Adam D. Zuckerman, D.C., et al., Dfts. // To: GreenSky, LLC

2. **Document(s) Served:**  Other: -

3. **Court of Jurisdiction/Case Number:** None Specified
   Case # CACE20018211

4. **Amount Claimed, if any:**  N/A

5. **Method of Service:**

   _X_ Personally served by:     _X_ Process Server      ___ Law Enforcement      ___ Deputy Sheriff      ___ U. S Marshall

   ___ Delivered Via:     ___ Certified Mail      ___ Regular Mail      ___ Facsimile

   ___ Other (Explain):

6. **Date and Time of Receipt:**   11/10/2020 01:04:00 PM CST

7. **Appearance/Answer Date:**  None Specified

8. **Received From:**     None Specified          9. **Carrier Airbill #** 1ZY041160192138587

10. **Call Made to:** Not required

11.  **Special Comments:**
SOP Papers with Transmittal, via  UPS Next Day Air

Image SOP

Email Notification,  Steven E. Fox  steve.fox@greensky.com

Email Notification,  Ann Broussard  ann.broussard@greensky.com

Email Notification,  Camille Johnson  camille.johnson@greensky.com

Email Notification,  Andrea Hill  andrea.hill@greensky.com

Email Notification,  Camille Johnson  camille.johnson@greensky.com

**NATIONAL REGISTERED AGENTS, INC.**                    CopiesTo:

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

## NATIONAL REGISTERED AGENTS, INC.

### SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:   Steven E. Fox
      GreenSky, LLC
      5565 GLENRIDGE CONNECTOR, SUITE 700
      ATLANTA, GA 30342

SOP Transmittal #   **538566832**

800-592-9023 - Telephone

Entity Served:   GreenSky, LLC  (Domestic State: GEORGIA)

Transmitted by   Amy McLaren

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

JOAN SIMRING,

            Plaintiff,                 Case No: CACE-20-018211

v.

ADAM D. ZUCKERMAN, D.C.;
ADAM D. ZUCKERMAN, D.C., P.A.
d/b/a CHRONIC CONDITIONS CENTER
a/k/a REGENERATIVE MEDICINE
OF SOUTH FLORDA; GREENSKY, LLC;
GREENSKY SERVICING, LLC; and
FIFTH THIRD BANK,

            Defendants.

_____/

## SUMMONS

**THE STATE OF FLORIDA:**

To Each Sheriff of Said State:

**YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the complaint or petition in this action on defendant:

Greensky, LLC
National Registered Agents, Inc.
289 S. Culver Street
Lawrenceville, GA 30046

Defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, to wit: Matthew R. Simring, Esq., The Simring Law Group, P.A., 235 East Commercial Blvd, Suite 205, Lauderdale By The Sea, Florida 33308, Matthew@simringlaw.com, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and seal of said Court on November _____    NOV 03 2020

                      as Clerk of said Court

By:_____
   As Deputy Clerk



**BRENDA D. FORMAN**

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Attorneys for Petitioner."  (Demandante o Abogado de Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des partis nommes ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le delai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite a "Attorneys for Petitioner" (Plaignant ou a son avocat nomme ci-dessous).

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

JOAN SIMRING,
on behalf of herself and all others
similarly situated,

        Plaintiff,               **CLASS CERTIFICATION REQUESTED**

v.                              **JURY TRIAL DEMANDED**

ADAM D. ZUCKERMAN, D.C.;
MELISSA EIRICH, M.D.;
ADAM D. ZUCKERMAN, D.C., P.A.
d/b/a REGENERATIVE MEDICINE
OF SOUTH FLORDA a/k/a
CHRONIC CONDITIONS CENTER
a/k/a FUSION MEDICAL CENTER;
GREENSKY, LLC;
GREENSKY SERVICING, LLC; and
FIFTH THIRD BANK,

        Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Joan Simring, individually and on behalf of all other Floridians similarly situated, sues

Defendants Adam D. Zuckerman, D.C.; Melissa Eirich, M.D.; Adam D. Zuckerman, D.C., P.A. d/b/a

Regenerative Medicine of South Florida a/k/a Chronic Conditions Center a/k/a Fusion Medical

Center ("ADZPA"); GreenSky, LLC; GreenSky Servicing, LLC; and Fifth Third Bank, and alleges:

### Parties, Jurisdiction, and Venue

1.      This is a class action for damages exceeding $30,000 in the aggregate, exclusive of

interest, costs, and fees.

2.      Plaintiff, Joan Simring, is a resident of Broward County, Florida.

3.      Adam D. Zuckerman, D.C., is a Florida resident.

4.      ADZPA is a Florida professional association.



5.     Melissa Eirich, M.D., is a Florida resident and an agent and employee of ADZPA.

6.     Adam D. Zuckerman, Melissa Eirich, and ADZPA are referred to collectively herein as **Zuckerman**.

7.     GreenSky Servicing, LLC and GreenSky Servicing, LLC are Georgia corporations referred to collectively as **GreenSky**.

8.     Fifth Third Bank is a federal bank based in Cincinnati, Ohio.

9.     GreenSky and Fifth Third Bank are subject to specific and general personal jurisdiction in Florida under §§ 48.193(1)(a)(1), (a)(2) & (a)(7), Fla. Stat., because the causes of action alleged herein arise from and relate to the commission of the subject tortious acts within Florida and because they operate, conduct, engage in, and carry-on extensive business activities in Florida.

10.    Venue is proper in Broward County because the causes of action alleged herein accrued in this judicial circuit.

### General Allegations

11.    This is a class action lawsuit brought on behalf of Florida senior citizens tricked into financing "stem cell" injections to treat neuropathy with a medication that was not approved for such use by the FDA, which Defendants are not licensed to administer, and for which there is no scientific proof of effectively treating neuropathy.

### A. The False Advertisement

12.    Joan is an 80-year-old, widowed senior citizen living on Social Security in Tamarac.

13.    Joan suffers from neuropathy in her feet.

14.    On Sunday, October 6, 2019, Joan read Zuckerman's half-page advertisement in the *Sun Sentinel* newspaper offering non-invasive, drug-free treatment for neuropathy, which is reprinted below and has been running for many consecutive months (**False Advertisement**).

Page **2** of **19**





Sunday, October 6, 2019 SunSentinel.com Sun Sentinel | 13A

# Peripheral Neuropathy WARNING!

Peripheral neuropathy is a result of damage to the nerves often causing weakness, pain, numbness, tingling, and the most debilitating balance problems.

This damage is commonly caused by a lack of blood flow to the nerves in the hands and feet which causes the nerves to begin to degenerate, due to lack of nutrient flow.

As you can see in Figure 1, as the blood vessels that surround the nerves become unhealthy, they shrivel up, which causes the nerves to not receive the nutrients to continue to thrive. When these nerves begin to deteriorate they cause you to have balance problems, pain, numbness, tingling, burning, and many additional symptoms.

Boynton Beach, FL - The most common method recommended to treat your neuropathy is with prescription drugs that may temporarily reduce your symptoms. These drugs have names such as Gabapentin, Lyrica, Cymbalta, and Neurontin, and are primarily antidepressant or anti-seizure drugs. These drugs may cause you to feel uncomfortable and have a variety of harmful side effects.

The main problem is that you have been told to just live with the problem or try the drugs which you don't like taking because they make you feel uncomfortable. There is now a facility right here in Boynton Beach that offers you new hope, naturally without taking those endless drugs with serious side effects. (See the special neuropathy severity examination at the end of this article)

The treatment to increase blood flow utilizes a specialized low-level light therapy (not to be confused with laser therapy) using light emitting diode technology.

The low level light therapy is like watering a tree. The light therapy will allow the blood vessels to improve around the peripheral nerves and provide them with the proper nutrients to heal and repair. It's like adding water to a tree and seeing the roots grow deeper and deeper.

The amount of treatment needed to allow the nerves to improve varies from person to person and can only be determined after a detailed neurological and structural evaluation.

**As long as you have not sustained too much nerve degeneration, there may be hope!**

**Figure 1:** When these very small blood vessels become diseased, they begin to shrivel up and the nerves begin to degenerate.

**In order to effectively improve your neuropathy symptoms three factors must be determined.**

1. What is the underlying cause?
2. How much nerve degeneration has been sustained?*
3. How much treatment you may require?

*Don't Hesitate to Act Now!*

**Peripheral Neuropathy is a progressive condition and what we have unfortunately is that once you have sustained too much nerve degeneration, there might not be anything we can do to help.*

**The treatment that is provided at the Chronic Conditions Center has three main goals:**

1. Increase blood flow
2. Stimulate small fiber nerves
3. Decrease brain-based pain

Figure 2: The blood vessels can improve around the nerves much like a tree's roots grow when watered.

[illegible] at Chronic Conditions Center will do a neuropathy severity examination to determine the extent of your nerve condition for only $60 (up to a $300 value). This neuropathy severity examination will consist of a detailed sensory evaluation and a detailed analysis of the findings of your neuropathy.

[illegible] will be offering this neuropathy severity examination from now until Friday, October 18th, 2019.

[illegible] to make an appointment with Dr. Zuckerman to determine if your peripheral neuropathy symptoms can be helped.

CHRONIC CONDITION CENTER

**CALL 561-752-4646**

**Chronic Conditions Center**
**8280 Jog Rd, Boynton Beach, FL 33472**
**Dr. Adam Zuckerman, D.C. | 561-752-4646**
**www.ChronicConditionsCenterFL.com**

The discounted offer does not apply toward insurance, federal insurance programs or Medicare. Our office policy is that the patient and any other person responsible for payment has the right to refuse to pay, cancel payment or be reimbursed for payment for services within 72 hours of this advertisement.

15.     The False Advertisement offered to treat neuropathy using LED lights:

> uncomfortable. There is now a facility right here in Boynton Beach that offers you new hope, naturally without taking those endless drugs with serious side effects. (see the special neuropathy severity examination at the end of this article)
>
> The treatment to increase blood flow utilizes a specialized low-level light therapy (not to be confused with laser therapy) using light emitting diode technology.
>
> The low level light therapy is like watering a tree. The light therapy will allow the blood vessels to improve around the peripheral nerves and provide them with the proper nutrients to heal and repair. It's like adding water to a tree and seeing the roots grow deeper and deeper.

16.     The False Advertisement never mentions "stem cells."

17.     In fact, the False Advertisement promises "*new hope without taking drugs*" using "*low level light therapy,*" which is like "*watering a tree.*"

18.     The False Advertisement, which is geared towards senior citizens, deceptively offers "neuropathy severity" examinations for $60 followed by LED light treatments. Given that the price to *purchase* infrared LED boots ranges from $159 to $525, Joan reasonably believed, as did the Class Members, that the cost of treatment at Zuckerman's office would be much less.

19.     Joan responded to the False Advertisement by making an appointment to see Dr. Zuckerman about LED light treatment for neuropathy.

20.     Because the False Advertisement never mentioned "stem cells" or any other type of injectable drug, Joan reasonably believed that the cost of her visit would be in the neighborhood of

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



$60 to a $200 hundred and that *no invasive medical treatment would be performed*, which makes sense because Adam Zuckerman is a chiropractor, not a medical doctor.

**B.  The Bait and Switch Scheme**

21.     Joan visited Zuckerman's office on October 10, 2019.

22.     Instead of treating Joan with LED lights as falsely advertised, Zuckerman tricked Joan into accepting treatment using "stem cell" injections in her feet.

23.     Dr. Zuckerman told Joan not to worry about the cost because he would finance the treatment for her using GreenSky.

24.     The treatment, however, was a complete and total sham.

25.     The drug that was injected into Joan's feet, and those of the other Class Members, under the supposed supervision of Mellissa Eirich, M.D., is marketed under the name "Accelerate GF" and is *not* approved by the FDA to treat neuropathy.

26.     Neither Zuckerman nor the other Defendants disclosed to Joan or the other Class Members that Accelerate GF was not approved by the FDA to treat neuropathy.

27.     Nor did the Defendants disclose to Joan or the other Class Members that Zuckerman and Eirich were *not* licensed by the FDA to administer Accelerate GF.

28.     Zuckerman and the other Defendants also failed to disclose to Joan and the other Class Members that Accelerate GF had *never been tested for use in treating neuropathy in a clinical trial* and had not even been the subject of peer-reviewed scientific literature.

29.     The only study that links "Accelerate GF" to any type of neuropathy is a five-page document listed on the Defendants' website, entitled, "Case Study: Novel Approach to HIV-Associated Neuropathy – Platelet Rich Plasma Successful in Treating HIV-Associated Peripheral

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com

Neuropathy," Journal of Therapy and Management in HIV Infection, 2013."
https://www.regenmedsouthflorida.com/peripheral-neuropathy/

30.     The case study is irrelevant because neither Joan nor any of the Class Members have HIV-associated neuropathy.

31.     Even if the case study were somehow relevant, it is not based on a clinical trial and there was no experimental or control group involved.

32.     Moreover, the case study was paid for by a pharmaceutical company, PlasmaGenix, Inc., not a neutral laboratory, and therefore is neither credible, legitimate, nor scientifically valid.

33.     The treatments provided by Zuckerman to Joan and the other Class Members were thus not only unapproved and unlicensed by the FDA but also unproven, untested, and *off label*.

34.     Zuckerman and the other Defendants ***deliberately failed to disclose*** to Joan and the other Class Members not only that Accelerate GF had not been approved or licensed by the FDA to treat neuropathy but also that no legitimate scientific literature or clinical study actually supported its off-label use to treat neuropathy.

35.     The Defendants invoked the magic words "stem cells" to deceive the Class Members into ***borrowing money*** to pay for ***experimental treatments*** with ***no proven record of success*** and ***no FDA approval or licensing***.

36.     The Defendants not only sold unregulated snake oil, but also ***<u>financed</u>*** the sale of snake oil to the most economically, psychologically, and physically fragile citizens of our society.

37.     This was an extremely dangerous bait and switch scheme, which is still on-going, that threatens the health and safety of senior citizens who are being given ***experimental*** injections not approved by the FDA or proven in any way to help their condition without any truthful disclosures.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



38. Unsurprisingly, the alleged "treatments" given to Joan and the other Class Members was totally ineffective and did not relieve any of their neuropathy symptoms.

39. In fact, as GreenSky and Fifth Third Bank knew from customer complaints by Joan and the other Class Members, Zuckerman has *never successfully* treated a patient for neuropathy or alleviated their painful symptoms.

40. Despite the dismal failure of his snake oil treatments, Zuckerman kept taking money from senior citizens day after day, week after week, month after month.

41. GreenSky and Fifth Third Bank kept financing the phony treatments even though they were fully aware that 100% of Dr. Zuckerman's patients were senior citizens living on fixed incomes who could not actually afford to pay thousands of dollars for speculative, and unproven treatments.

42. Had Joan or the other Class Members been told up front in the False Advertisement that Zuckerman was going to sell them stem cell injections at a cost of thousands of dollars with no proven record of success, none of them would have even shown up in his office.

43. That is why Zuckerman uses a "bait and switch" scheme to offer $60 evaluations in his False Advertisement – so he can get the patients in the door.

44. Once Zuckerman gets the patients in the door, however, he offers "instant" same-day financing right at his receptionist's counter for thousands of dollars.

45. Zuckerman's receptionist fills out the GreenSky credit card application online for the patient, as she did for Joan; prints the acceptance letter, as she did for Joan; and never informs the patient of the material terms of the contract other than the monthly payment amount.

46. Significantly, patients are not given time to read the credit card agreement before having to agree to its terms so that Zuckerman can be paid, in full, upfront, the same day.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



47.     Joan, who is 80 years old, walked into a chiropractor's office expecting to pay $60 for an evaluation and maybe a few hundred dollars for treatment and walked out with a $7,500 credit card albatross around her neck that she neither wanted, needed, nor understood and that she certainly could not afford on a fixed income.

48.     Joan was totally at the mercy of Zuckerman's receptionist, who acted at GreenSky's behest to maximize Joan's credit by acting as her unlicensed financial advisor to apply for the loan and who downplayed the risk by emphasizing only the monthly payment instead of the full amount owed.

49.     Critically, Defendants never advised Joan or the Class Members about the arbitration clause or class action waiver provision in paragraph 25 of the credit card agreement or even gave them a chance to read the agreement and understand what it says before being whisked away into treatment.

50.     The Arbitration Clause purports to require the Plaintiff and other Class Members not only to give up their rights to access the Florida Court system to resolve this dispute against GreenSky and Fifth Third Bank but also purports to bind the Plaintiff and the other Class Members to give up their right to file suit in Court against ***third parties***, including Zuckerman. The arbitration clause is unconscionable and violates public policy because senior citizens cannot be forced to give up their rights to access the courts for suits against third parties without consideration or fair disclosure.

51.     The acceptance letter from GreenSky to Joan shows that Zuckerman and the other Defendants tricked Joan into agreeing to pay 9.04% interest over 60 months, for a total cost of $7,315.80, for alleged "stem cell" treatments (read: "snake oil") that were not authorized by the FDA, that the Defendants are not licensed to administer, that have no proven effectiveness, that are not based on a peer-reviewed clinical trial, and that have never helped a single patient alleviate their pain.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com

52.     Worse than all the foregoing is that Zuckerman did not actually tailor the treatments to the needs of the patients but rather determined the course of treatment to *maximize the patient's credit regardless of medical necessity.*

53.     GreenSky and Fifth Third Street Bank knew about the bait and switch scheme, and knew that Zuckerman was maximizing the credit for every single patient regardless of medical necessity, and despite receiving numerous complaints from Joan and the other Class Members, continued to finance the scheme and provide kickbacks in the form of vacations, gifts, and dinners to Zuckerman to continue to encourage Zuckerman to use their credit platform to sell snake oil.

54.     Joan has spoken to numerous other patients of Zuckerman, all of whom are senior citizens that were ensnared in the "bait and switch" scheme and who borrowed thousands of dollars to pay for treatments that were totally useless to alleviate their symptoms.

55.     One such posted a warning on Google, which is reprinted below.



56.     Dr. Zuckerman took advantage of Joan and the other Class Members by tricking them into believing that they would benefit from receiving "stem cell" injections instead of LED light treatments promised by the False Advertisement and then tricking them into paying thousands of dollars for ineffective, unproven, unauthorized, and unlicensed treatments with snake oil.

57.     We refer to the foregoing collectively as the "**Bait and Switch Scheme**."

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



### C. Nationwide Epidemic of Stem Cell Fraud

58.    The Bait and Switch Scheme is part of a nationwide trend of stem cell clinics that are now actively being pursued and shut down by state attorneys' general because there is no scientific proof that "stem cells" treat neuropathy.

59.    A non-exhaustive list of AG investigations is at the following hyperlinks:

- https://www.abcactionnews.com/news/local-news/i-team-investigates/inside-the-hard-sell-for-stem-cell-therapy-in-florida

- https://www.stemcures.com/just-when-i-thought-i-heard-everything-about-fake-stem-cell-clinics-i-was-shocked

- https://www.courthousenews.com/nebraska-firm-accused-of-targeting-seniors-for-unproven-stem-cell-treatment/

- https://regenexx.com/blog/stem-cell-treatment-for-neuropathy/#gref

- https://www.consumerreports.org/medical-treatments-procedures/trouble-with-stem-cell-therapy/

- https://wjla.com/features/7-on-your-side/stem-cell-treatment-virginia-clinic

- https://www.iowaattorneygeneral.gov/newsroom/stem-cell-therapy-elder-deceptive-copd-autor

60.    All conditions precedent required to file this action have been performed or have been waived or would be futile to perform.

### Class Allegations

61.    Plaintiff brings this action on her own behalf and as Class Representative pursuant to Florida Rule of Civil Procedure 1.220.

62.    The Class is defined as follows:

**All persons over 64 years of age who visited Dr. Zuckerman after reading the False Advertisement and who received "stem cell" treatments financed by GreenSky.**

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



63.     Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition and to define sub-classes

64.     Excluded from the definition of the Class are persons affiliated with any Defendant; the Court; all persons within third degree of relationship to the Court; and spouses of such persons.

65.     The members of the Class are so numerous that joinder of all of them is impracticable.

66.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.

67.     The common questions are, among other things, whether the Bait and Switch Scheme constituted an unfair, deceptive, or unconscionable act or practice.

68.     Plaintiff will fairly and adequately protect the interests of the Class.

69.     The prosecution of separate actions by individual Class members could result in conflicting or incompatible standards of conduct for Defendants, may impair or impede the interests of other Class members, and would result in undue judicial waste and inefficiency.

70.     This class action is superior to other available methods for the fair and efficient adjudication of this controversy and the proposed Class is manageable.

71.     Plaintiff has retained undersigned counsel to represent him in this action and has agreed to pay a reasonable fee for counsel's services.

### Count 1
### <u>Exploitation of Elderly Adults</u>
(Against All Defendants)

72.     Plaintiff repeats and re-alleges paragraphs 1 through 71.

73.     This is an action for exploitation of an elderly adult as defined in Chapter 825, Florida Statutes, for which section 772.11, Florida Statutes, provides a civil remedy. *See* § 772.11(1), Fla. Stat. ("Any person who proves by clear and convincing evidence that he or she has been injured in any

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.").

74. The Bait and Switch Scheme constituted "exploitation of an elderly adult" in violation section 825.103(1), Florida Statutes, because the Defendants had a business relationship with Plaintiff and knowingly obtained or used Plaintiff's funds with the intent to permanently deprive her of their use and benefit.

75. Plaintiff and the other Class Members have damaged as a direct and proximate result of the foregoing violations of the elder exploitation statute.

### Count 2
### Violation of the Florida Deceptive and Unfair Trade Practices Act
(Against All Defendants except Fifth Third Bank)

76. Plaintiff repeats and re-alleges paragraphs 1 through 71.

77. This is an action for violation of Chapter 501, Florida Statutes, known as the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

78. The Bait and Switch Scheme violated section 501.204, Florida Statutes, because it constituted an unfair method of competition, unconscionable act or practice, and unfair or deceptive act or practice in the conduct of trade or commerce.

79. Consummation of the Bait and Switch Scheme would have been impossible but for the participation of GreenSky and Fifth Third Bank as the financiers.

80. Plaintiff and the other Class Members have been damaged as a direct and proximate result of the foregoing violation of FDUTPA.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



### Count 3
### Violation of the Florida Consumer Collection Practices Act
(Against GreenSky)

81.    Plaintiff repeats and re-alleges paragraphs 1 through 71

82.    This is an action for violation of the Florida Consumer Collection Practices Act (FCCPA), sections 559.55 to 559.785, Florida Statutes.

83.    GreenSky and Fifth Third Bank violated section 559.72(9), Florida Statutes, by virtue of Bait and Switch Scheme, because they have attempted to enforce a debt that they know is not legitimate.

84.    Plaintiff and the other Class Members have been damaged as a direct and proximate result of GreenSky's misconduct.

### Count 4
### Battery
(Against Zuckerman)

85.    Plaintiff repeats and re-alleges paragraphs 1 through 71.

86.    The Bait and Switch Scheme and the corresponding injections of drugs into Joan and the other Class Members were intentional harmful and offensive bodily contacts.

87.    Neither Joan nor the other Class Members gave knowing, voluntary consent to the injections because they were deprived of necessary information by virtue of the Bait and Switch Scheme, which concealed that the stem cell injections were not approved the FDA to treat neuropathy and had not been proven effective in any clinical trials.

88.    Plaintiff and the other Class Members have been damaged as a direct and proximate result of the foregoing battery.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



## Count 5
### Independent Tort of Civil Conspiracy
(Against All Defendants)

89.     Plaintiff repeats and re-alleges paragraphs 1 through 71.

90.     This is an action for the independent tort of conspiracy.

91.     Defendants wrongfully and with full and actual knowledge, conspired, using a peculiar power of coercion created by virtue of their combined and cohesive action as a group, to commit the Bait and Switch Scheme.

92.     In addition, Defendants wrongfully and with full and actual knowledge, conspired, using a peculiar power of coercion created by virtue of their combined and cohesive action as a group to require consumers, like Plaintiff and the other Class Members, to sign the Arbitration Clause.

93.     Plaintiff and the other Class members have been directly and proximately damaged by the foregoing conspiracy, which could only have been accomplished with the full an active concert of all the Defendants.

94.     Plaintiff and the other Class Members have been directly and proximately damaged by foregoing conspiracy, which could only have been accomplished with the full an active concert of all the Defendants.

## Count 6
### Negligence
(Against GreenSky and Fifth Third Bank)

95.     Plaintiff repeats and re-alleges paragraphs 1 through 71.

96.     GreenSky and Fifth Third Bank owed a duty of care to Plaintiff to ensure that merchants like Zuckerman were not using their financing platform to defraud senior citizens into paying for unlicensed, unauthorized, and 100% completely ineffective stem cell treatments.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



97.     GreenSky and Fifth Third Bank also owed a duty of care to make sure that merchants like Zuckerman did not systematically seek to maximize the credit available for 80-year-olds to receive unproven treatments for neuropathy.

98.     At all times material, Zuckerman acted as the agent for GreenSky in trolling for senior citizens with good credit who could max out the card immediately for stem cell treatments.

99.     Here, the five-year payout on $7,500 loan to an 80-year-old woman on Social Security for fake medical treatments is unsuitable, immoral, unethical, and unconscionable.

100.    GreenSky and Zuckerman targeted elderly, frail, and vulnerable senior citizens to steal their money in exchange for snake oil financed at 10% interest.

101.    In the real world, this is called exploitation and although we believe it was clearly intentional and deliberate, to the extent that GreenSky and Fifth Third Bank can actually show that they did not know about the Bait and Switch Scheme, it is beyond doubt that they were negligent in not only allowing it to happen and in profiting from it but from turning a blind eye to the harm caused to senior citizens.

102.    GreenSky and Fifth Third Bank breached their duties of duty of care by, among things, (i) failing to detect and prevent Zuckerman from committing the Bait and Switch Scheme; (ii) allowing the Bait and Switch Scheme to take place; (iii) approving Joan's financing application with unsuitable terms for a senior citizen; and (iv) failing to know their customer.

103.    In addition, GreenSky and Fifth Third Bank breached their duties of care by failing to act commensurate with the state-of-the-art supervisory, regulatory, and compliance standards of reasonably prudent financial institutions in allowing Zuckerman to commit the Bait and Switch Scheme and to fill out applications directly for consumers.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



104.     As a direct and proximate result of Defendants' negligence, Plaintiff and the other Class Members have been damaged.

<div align="center">

**Count 7**
**Unjust Enrichment**
(Against all Defendants)

</div>

105.     Plaintiff repeats and re-alleges paragraphs 1 through 71.

106.     By virtue of the Bait and Switch Scheme, the Defendants received and retained improper monetary benefits.

107.     Under the circumstances, it would be unjust and inequitable for Defendants to retain these benefits.

108.     Plaintiff and the other Class Members have been damaged as a direct and proximate result of the Defendants' inequitable misconduct.

<div align="center">

**Count 8**
**Declaratory Judgment That Arbitration Clause**
**Is Void Against Public Policy and Unconscionable**
(Against All Defendants)

</div>

109.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 71.

110.     The is an action to declare Paragraph 25 of the credit card agreement void because the Arbitration Clause is substantively and procedurally unconscionable and violates Florida's public policy of assuring free and open access to the Court system for senior citizens.

111.     Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party. As explained by the Florida Supreme Court:

> Unconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions that are overreaches by one party to gain "an unjust and undeserved advantage which it would be inequitable to permit him to enforce." "Unconscionability has generally been recognized to include an *absence of meaningful choice* on

<div align="center">

Page **16** of **19**

</div>

<div align="center">

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com

</div>



the part of one of the parties together with contract terms which are *unreasonably favorable to the other party*." The absence of meaningful choice when entering into the contract is often referred to as procedural unconscionability, which "relates to the manner in which the contract was entered," and the unreasonableness of the terms is often referred to as substantive unconscionability, which "focuses on the agreement itself."

*Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157-58 (Fla. 2014).

112.    The Florida Supreme Court explained procedural unconscionability thus:

> The central question in the procedural unconscionability analysis is whether the complaining party lacked a meaningful choice when entering the contract. When determining whether a contract is procedurally unconscionable, Florida courts consider the following:
>
>> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Basulto*, 141 So. 3d at 1158 n.3 (citations omitted).

113.    The Florida Supreme Court explained substantive unconscionability as follows:

> Substantive unconscionability focuses on whether the terms are "unreasonably favorable" to the other party and "whether the terms of the contract are so unfair that enforcement should be withheld." In other words, the reviewing court asks whether the more powerful party overreached and "gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce."

*Basulto*, 141 So. 3d at 1158 n.4 (citations omitted).

114.    Procedurally, Plaintiff and the other class members had no meaningful choice in negotiating the Arbitration Clause because Defendants made it clear that the agreement terms were not-negotiable under any circumstances; because the arbitration clause was part of a boilerplate, "standard form" contract of adhesion (*i.e.*, it was "take it or leave it."); and because Defendants never

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com


permit any consumer to negotiate the terms of the credit card agreement. In short, there was a gross inequality of bargaining power between Plaintiff, on the one hand, and Defendants on the other.

115.     Substantively, it is unconscionable to require senior citizens to sign an Arbitration Clause that that requires them to relinquish their constitutional right under Florida law to sue *unaffiliated third parties* in Court and to give up the right to participate in a class action *for no consideration*. It is even more unconscionable not to have disclosed that the Arbitration Clause purports to apply to claims against third parties more clearly so that it was obvious to the consumer.

116.     There is an actual, genuine, and *bona fide* dispute between the parties as to whether paragraph 25 of the credit card agreement is unconscionable and/or void as against public policy.

117.     Plaintiff and the other Class members have no adequate remedy at law.

### Prayer for Relief

**WHEREFORE,** Plaintiff respectfully requests that the Court:

 a.   Certify the putative Class;

 b.   Award monetary damages, jointly and severally, against all Defendants;

 c.   Declare the arbitration clause and class action waiver void due to their unconscionability and for violating Florida public policy;

 d.   Award treble damages under § 772.11(1), Fla. Stat.;

 e.   Award additional statutory damages of $1,000 for the named plaintiff and additional statutory damages of $500,000 for the Class Members under § 559.77(2);

 f.   Award attorneys' fees to Plaintiff under §§ 772.11(1), 501.2105, and 559.77, Fla. Stat.;

 g.   Award costs of suit; and

 h.   Grant such further relief as the Court deems just and proper.

Plaintiff reserves the right to seek to amend this Complaint to add a claim for punitive damages

Page **18** of **19**

## Demand For Jury Trial

Plaintiff demands trial by jury on all issues so triable.

## Request for Calendar Advancement

Pursuant to sections 415.1115 and 772.11(5), Florida Statutes, undersigned counsel respectfully requests that the Court advance this case on its trial docket because the Plaintiff and the Class Members are over 65 years of age.

Respectfully submitted,

**THE SIMRING LAW GROUP**
*Counsel for Plaintiff*
235 East Commercial Blvd Suite 205
Lauderdale By The Sea, FL 33308
Telephone: (954) 816-2417
Primary E-mail: matthew@simringlaw.com

By: /s/ Matthew R. Simring
Matthew R. Simring
(Florida Bar No. 175102)

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



### IN THE CRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

JOAN SIMRING,
on behalf of herself and all others
similarly situated,

        Plaintiff,

v.

ADAM D. ZUCKERMAN, D.C.;
et al.,

        Defendants.

_____/

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO GREENSKY

Plaintiff Joan Simring pursuant to Rule 1.350, Florida Rules of Civil Procedure, requests that

Defendants GreenSky, LLC and GreenSky Servicing, LLC (collectively, **GreenSky**) produce the

following documents for inspection and copying within 45 days of service.

### I.    Scope And Procedure

1.    This request for production of documents is intended to cover all documents (which is defined below to include, among other things, electronically stored information) in the possession, custody or control of GreenSky, and all other persons or entities acting on its behalf, wherever those documents might be located or stored, including "in the Cloud."

2.    Each request should be read so as not to include documents or things subject to an evidentiary privilege or immunity from discovery if necessary to permit the production of documents or things otherwise responsive to the request. To the extent that this request calls for the production of documents or things subject to a privilege or immunity from discovery, the written response to this request should so indicate, but Defendant is requested to produce the balance of the documents or things not subject to a claim of privilege that fall within the scope of the request.

3.    The documents called for by this are those containing information from **January 1, 2016** to the present.



## II.   Definitions

As used below, the following words shall have the meanings indicated:

1.  "**You**," "**your**," and "**GreenSky**" refer to GreenSky, LLC and GreenSky Servicing, LLC and their affiliates, predecessors, successors, subsidiaries, present and former officers, directors, controlling shareholders, members, managing members, partners, employees, agents, representatives, attorneys, and each person acting or purporting to act on each of their behalf.

2.  "**Document**" has the full extent of its meaning as in Florida Rule of Civil Procedure 1.350(a) and is intended to be comprehensive and to include, without limitation, all original writings of any nature whatsoever, copies and drafts which, by reason of notes, changes, initials, or identification marks are not identical to the original and all non-identical original copies thereof. In all cases where original or non-original copies are not available, "document" also means identical copies of original documents and copies of non-identical copies. The term thus includes, but is not limited to, any kind of written or graphic matter, however provided or reproduced, of any kind or description, whether sent or received or neither, including but not limited to papers, books, book entries, correspondence, telegrams, cables, telex messages, memorandum, notes, data, notations, work papers, inter-office communications, transcripts, minutes, reports and recordings of telephone or other conversations, or of interviews, or of conferences, or of committee meetings, or of other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, formulae, plans, specifications, evaluations, contracts, licenses, agreements, offers, ledgers, journals, books of records of account, summaries of accounts, bills, service invoices, receipts, balance sheets, income statements, questionnaires, answers to questionnaires, statistical records, desk calendars, appointment books, diaries, lists, tabulations, charts, graphs, maps, surveys, sound recordings, computer tapes, magnetic tapes, computer printouts, data processing input and output, e-mails, text messages, instant messages, microfilms, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, however, denominated, whether currently in existence or already destroyed.  A draft or non-identical copy is a separate document within the meaning of this term. The term "document" specifically includes emails, text messages, all social media content of any form, and all information maintained or exchanged by any electronic internal compliance system, warning, or tracking system.

3.  "**Communication**" means exchanges of information between or among two or more persons by any medium, including without limitation, meetings, telephone conversations, correspondence, memoranda, circulars, contracts, agreements, computer, radio, telegraph, electronic, email, instant message, text message, social media communications (including posts, shared pictures, "likes," and comments on Facebook, Instagram, SnapChat, Instagram, and all other similar social media), verbal, or any other actions intended to convey or actually conveying information or data.

4.  "**Documents**" and "**communications**" include electronically-stored information ("**ESI**") *in native format, including all metadata.*  ESI includes, without limitation: information that is generated, received, processed, and/or recorded by computers, servers, and/or other electronic data storage devices, including, without limitation, voicemail, electronic mail, and facsimiles

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



5.   **"Relating to"** means referring to, evidencing, pertaining to, consisting of, reflecting, concerning, or in any way logically or factually connected with the matter discussed or to which reference is made.

6.   **"Person"** means any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, state governmental agency, commission, bureau, or department.

### III.    Instructions

1.   Each document requested shall be produced in its entirety. If any part of a document is responsive to any of the following requests, the entire document should be produced. If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.   These requests are continuing in character and require you to supplement the responses within a reasonable time if you obtain or become aware of any further information responsive to these requests.

3.   With respect to any document or thing being withheld from production on the basis of the attorney-client privilege, work product doctrine, or other evidentiary privilege or immunity, you must:

     a)    identify the nature of the privilege which is being claimed and the rule of law under which the privilege is being asserted; and,

     b)    provide the following information:

          (i)     the type of document (e.g. letter, memorandum etc.);
          (ii)    the subject matter of the document;
          (iii)   the date of the document;
          (iv)    the present location and identity of the document's custodian; and,
          (v)     the author, addressee, and all recipients of copies of the document.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



## IV.  Documents Requested

1.    Documents and communications relating to Joan Simring.

2.    Documents and communications relating to Zuckerman's plans to inject stem cells into patients.

3.    Documents and communications relating to the False Advertisement.

4.    Documents and communications relating to Accelerate GF.

5.    Documents and communications relating to the consumer loan made by GreenSky to Joan Simring that is the subject of this action (the "Loan").

6.    The Loan file, including all paper and electronic records, including but not limited to the application, account statements, account analyses, and payment history.

7.    Documents and communications identifying the customers of GreenSky who financed treatments with Zuckerman sufficient to show the names; dates of treatment; amount charged; customers complaints; and whether their credit with GreenSky was maximized for treatments with Zuckerman.

8.    The underwriting file for Zuckerman's merchant account.

9.    Documents and communications relating to due diligence, investigation, or monitoring of Zuckerman's activities in referring patients to GreenSky.

10.   Documents and communications relating to compensation, bonuses, awards, benefits, dinners, and other items of value given to Zuckerman by GreenSky.

11.   Documents evidencing the total amount of money paid by GreenSky to Zuckerman in the past four years.

12.   Documents and communications that evidence, demonstrate, establish, or show that stem cell fraud is rising among senior citizen consumers.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com



13. Emails, internal memorandum, advisories, warning and other documents and communications regarding financing stem cell treatments.

14. Emails, internal memorandum, advisories, warning and other documents and communications regarding healthcare loans to senior citizens.

15. Documents and communication that describe the internal organization and structure of GreenSky, its subsidiaries, divisions, subdivisions, and/ or other corporate units and the relationships among them.

16. Print, audio, video, and social media advertising, promotions, and marketing, and all documents and communications related thereto, evidencing how GreenSky aims to protect its customers from fraud.

17. Your document retention policy.

18. Documents and communications, handbooks, manuals, training, educational and orientation materials, software, videos, guidelines, and FAQs relating to your policies, procedures, and protocols on the following topics:

      a) Loans to senior citizens;
      b) Loans to senior citizens for medical treatments;
      c) Loans to senior citizens for unproven medical treatments;
      d) Standards for determining which medical treatments are financeable;
      e) Standards for evaluating merchants, such as Zuckerman;
      f) Allowing merchants to fill out loan applications for customers;
      g) Financing experimental treatments by chiropractors and doctors
      h) "Know Your Customer";
      i) Detection of fraud; and
      j) Detection of improper lending activities.

19. Voice messages from the Plaintiff.

20. Recordings of telephone calls with the Plaintiff.

21. Voice messages from Class Members.

22. Recordings of telephone calls with Class Members.

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com

23.     Customer service notes for the Loan.

24.     Customer service notes for the loans made to the Class Members.

25.     All witness statements taken by you or your representatives that pertain to this case.

26.     All insurance policies that may provide coverage for the claims asserted in the Complaint (the "Policies").

27.     All documents and communications relating to the Policies, including all documents and communications with any insurer(s) who issued such Policies, including but not limited to reservation of rights letters and denial of coverage letters and responses thereto.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be served by process server together with the Complaint.

Respectfully submitted,

**THE SIMRING LAW GROUP**
*Counsel for Plaintiff*
235 East Commercial Blvd Suite 205
Lauderdale By The Sea, FL 33308
Telephone: (954) 816-2417
Primary E-mail: matthew@simringlaw.com

By: /s/ Matthew R. Simring
    Matthew R. Simring
    (Florida Bar No. 175102)

The Simring Law Group
235 East Commercial Blvd • Suite 205 • Lauderdale By The Sea, FL 33308
Tel: 954-816-2417 • www.simringlawgroup.com

